**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                               :

DAVID HOHSFIELD,                :           Civil No. 09-5377 (AET)

                 :

         Plaintiff,       :

                 :           **OPINION**

        v.             :

                 :

TWP. OF MANCHESTER, et al.,   :

                 :

        Defendants.     :

—————————————————————:

**APPEARANCES:**

       DAVID HOHSFIELD, #567841A, Plaintiff Pro Se
       Adult Diagnostic & Treatment Center
       8 Production Way 7-L-D
       Avenel, New Jersey  07001

**THOMPSON**, District Judge:

David Hohsfield, a prisoner incarcerated at Adult Diagnostic and Treatment Center, seeks to bring this action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on his affidavit of poverty, prison account statement and the apparent absence of three prior qualifying dismissals, see 28 U.S.C. § 1915(g), this Court will grant Plaintiff's application to proceed in forma pauperis as a prisoner and direct the Clerk to file the Complaint without prepayment of the filing fee.  See 28 U.S.C. § 1915(b).  Having thoroughly reviewed Plaintiff's allegations, this Court will dismiss the Complaint, without prejudice to the filing of an amended complaint stating a cognizable claim under 42 U.S.C. § 1983.

## I.  BACKGROUND

The Complaint seeks damages against the Township of Manchester, Manchester Police Department, unknown officers of Manchester Police Department, the Community Medical Center of Toms River, and unknown employees of the Community Medical Center.  Plaintiff asserts the following facts:

> On or about Oct. 20, 2007 Plaintiff was removed from his place of residence by officers of the Manchester Police Dept. who had received a call from plaintiff's then girlfriend informing them that plaintiff had overdosed on sleeping medication, when he had not. Officers responding to the call did not give plaintiff the choice of voluntarily going to hospital or refusing medical treatment.  Instead plaintiff was told that "either I sign the consent form to be transported to the hospital for treatment of I will be forced to go, either way your going."  Plaintiff admits taking sleeping medication that was prescribed by a doctor, however was never in danger of an overdose and therefore should have not been pressured by police to sign a consent form to be transported to the hospital against his will, and thereafter admitted for observation by person(s) unknown at this time . . . .  Plaintiff now asserts that he should not have been removed from his residence by threat nor coercion of police officer(s) that took advantage of the late hour and plaintiffs medicated condition at 3:00 am.  Furthermore, plaintiff asserts that he should not have been involuntar[il]y committed to the hospital for observation especially when medical tests proved that plaintiff was not overdosing on medication . . . . Thereafter on or about Nov. 2, 2007 plaintiff was charged and indicted for possession of CDS . . . which was administratively dismissed by the state on Feb. 21, 2008.  As the result of plaintiff being restrained against his will and deprived of his liberty by defendants, as well as prosecuted for a crime he did not commit he incurred $13,500 of hospital costs that were unnecessary and avoidable.

(Docket Entry #1 at pp. 6-7.)

Plaintiff seeks damages for unlawful restraint and false arrest.  (Docket Entry #1 at p. 8.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress from a governmental agent or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

Addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . . .  ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.

Id. at 230-34 (original brackets removed).

3

This pleading standard was further refined by the Supreme Court in its recent decision

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than
> an unadorned ["]the-defendant-unlawfully-harmed-me["]
> accusation. [Twombly, 550 U.S.] at 555 . . . .  A pleading that
> offers "labels and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at 555.
> [Moreover,] the plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Id. [Indeed, even
> w]here a complaint pleads facts that are "merely consistent with" a
> defendant's liability, [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'"  Id. at 557
> (brackets omitted).  [A fortiori,] the tenet that a court must accept
> as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions [or to t]hreadbare recitals of the
> elements of a cause of action, supported by mere conclusory
> statements [, i.e., by] legal conclusion[s] couched as a factual
> allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement
> [or] that [defendants] adopted a policy "'because of,' not merely 'in
> spite of,' its adverse effects upon an identifiable group." . . . . [W]e
> do not reject these bald allegations on the ground that they are
> unrealistic or nonsensical. . . .  It is the conclusory nature of [these]
> allegations . . . that disentitles them to the presumption of truth. . . .
> [Finally,] the question [of sufficiency of] pleadings does not turn
> [on] the discovery process.  Twombly, 550 U.S. at 559 . . . . [The
> plaintiff] is not entitled to discovery [where the complaint asserts
> some wrongs] "generally," [i.e., as] a conclusory allegation [since]
> Rule 8 does not [allow] pleading the bare elements of [the] cause
> of action [and] affix[ing] the label "general allegation" [in hope of
> developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no

set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was

---

[1]  The Conley court held that a district court was permitted to dismiss a complaint for
failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at

(continued...)

applied to federal complaints before <u>Twombly</u>. <u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203

(3d Cir. 2009). Since <u>Iqbal</u>, the Third Circuit has required the district courts to conduct, with

regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for

failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [<u>See</u> <u>Iqbal</u>,
> 129 S. Ct. at 1949-50]. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient
> to show that the plaintiff has a "plausible claim for relief" [in light
> of the definition of "plausibility" provided in <u>Iqbal</u>.] In other
> words, a complaint must do *more than allege the plaintiff's*
> *entitlement to relief*. A complaint has to "show" such an
> entitlement with its facts. <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35. As the
> Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts
> do not permit the court to infer more than the *mere possibility of*
> *misconduct, the complaint has alleged-but it has not 'show*[*n*]*'-'that*
> *the pleader is entitled to relief*.'" <u>Iqbal</u>, [129 S. Ct. at 1949-50
> (emphasis supplied)]. This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to draw on
> its judicial experience and common sense." <u>Id.</u>

<u>Fowler</u>, 578 F.3d at 210-11 (emphasis supplied).

The Court is mindful that the sufficiency of this <u>pro se</u> pleading must be construed

liberally in favor of the plaintiff, even after <u>Iqbal</u>. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

With these precepts in mind, the Court will determine whether the Complaint should be

dismissed for failure to state a claim upon which relief may be granted.

---

[1](...continued)
45-46.

# III.  DISCUSSION

A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; <u>see also</u> 28 U.S.C. § 1331.  Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); <u>Sample v. Diecks</u>, 885 F.2d 1099, 1107 (3d Cir. 1989).  This Court construes Plaintiff's allegations as an attempt to assert a claim that defendants seized him in violation of the Fourth Amendment and deprived him of liberty without due process in violation of the Fourteenth Amendment.

<u>A.  Fourth Amendment</u>

New Jersey law requires police to "take custody of a person and take the person immediately and directly to a screening service if[, o]n the basis of personal observation, the law

6

enforcement officer has reasonable cause to believe that the person is in need of involuntary commitment to treatment."  N.J. Stat. Ann. § 30:4-27.6(a).  "'In need of involuntary commitment' . . . means that an adult with mental illness, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been offered, needs out-patient treatment or inpatient care at a short-term care of psychiatric facility . . . because other services are not appropriate or available to meet the person's mental health care needs."  N.J. Stat. Ann. § 30:4-27.2(m).  "'Dangerous to self' means that by reason of mental illness the person has threatened or attempted suicide or serious bodily harm . . ."  N.J. Stat. Ann. § 30:4-27.2(h).

'[T]he Fourth Amendment applies to seizures made for civil purposes, and the central inquiry is the same as in the criminal context - whether the government's conduct was reasonable under the circumstances."  Must v. West Hills Police Dept., 126 Fed. App'x 539, 542 (3d Cir. 2005).  "[T]he temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a 'special need permitting the state to act without a warrant."  Doby v. DeCrescenzo, 171 F. 3d 858, 871 (3d Cir. 1999).  To determine whether a Fourth Amendment violation occurred, a court must ask "whether the Officers had probable cause to believe that [plaintiff] presented an imminent threat of serious bodily harm to either himself or others at the time of the seizure."  Must, 126 Fed. App'x at 543.

Here, on the facts alleged in the Complaint, probable cause existed because, at the moment Plaintiff was "seized" by police for evaluation, the facts and circumstances reasonably believed by the police officers indicated that Plaintiff presented a threat of serious harm to himself by reason of a potential overdose from sleeping pills.  According to the Complaint, these

officers  responded to an emergency call from Plaintiff's then girlfriend alerting the police that

Plaintiff had overdosed on sleeping pills.  Plaintiff admits that he had taken prescribed sleeping

medication, but he complains that the seizure violated his rights because the police "took

advantage of the late hour and plaintiff['] medicated condition" (Docket Entry #1 at p. 7) and he

had not taken an overdose of sleeping pills.  The girlfriend's telephone call alerting police that

Plaintiff had overdosed on sleeping pills and Plaintiff's admission that he had in fact taken

sleeping pills, however, were sufficient to give the police probable cause to believe that, in the

absence of an evaluation, Plaintiff may have been in danger of death through an overdose.  See

S.P. v. City of Takoma park, Md., 134 F. 3d 260, 267-68 (4th Cir. 1998) (finding officers'

transportation of plaintiff to hospital in response to emergency police dispatch alerting them that

plaintiff's husband had telephoned police stating that she needed help was reasonable where

plaintiff was upset and irrational when police arrived); Maaq v. Wessler, 960 F. 2d 773, 775 (9th

Cir. 1992) (officers' detention of person for emergency mental evaluation was reasonable when

based, in part, on concerned family members' statements that he was acting irrationally); Harris

v. Pirch, 677 F. 2d 681, 689 (8th Cir. 1982) (officers' detention of plaintiff for emergency

psychiatric evaluation was reasonable where police were responding to call from ex-husband

who reported that plaintiff said she'd taken pills and was going to kill herself and, when police

arrived, plaintiff  "was upset . . . and became more upset and angry when [officer] questioned her

about the alleged overdose and that [plaintiff] showed [officer] a partially empty bottle of pills").

Because "the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to

relief.'" Fowler, 578 F.3d at 210-11 (quoting Iqbal, 129 S. Ct. at 1949-50).  Because the facts

alleged in the Complaint are not sufficient to show that Plaintiff was seized by any named defendant in violation of the Fourth Amendment, this Court will dismiss the Fourth Amendment claims against all defendants for failure to state a claim upon which relief may be granted.

B.  Due Process

Plaintiff's allegations may also be construed as potentially asserting substantive and procedural due process claims.  The substantive due process claim fails because "[t]he State may [involuntarily] confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous."  Foucha v. Louisiana, 504 U.S. 71, 80 (citation and internal quotation marks omitted).  Moreover, given the girlfriend's call to police and the fact that Plaintiff had taken sleeping medication, the conduct of defendants alleged by Plaintiff does not shock the conscience.  See County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"); Rochin v. California, 342 U.S. 165, 172 (1952) (whether an incident "shocks the conscience" is a matter of law).  Accordingly, the substantive due process claim will be dismissed for failure to state a claim upon which relief may be granted.

On the facts alleged in the Complaint, the procedural due process claim is foreclosed by Third Circuit precedent.  The Third Circuit has ruled that, "in an emergency situation, a short-term commitment without a hearing does not violate procedural due process."  Benn v. Universal Health System, Inc., 371 F. 3d 165, 174 (3d Cir. 2004).  Because the facts alleged in the Complaint show that Plaintiff's potential overdose presented an emergency situation and that he

was released from the hospital within 10 days, defendants did not violate Plaintiff's procedural due process rights by not providing him a hearing before he was taken to the medical center.  Id.

However, a District Court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).  It is not inconceivable that Plaintiff may be able to assert additional facts in an amended complaint to state a cognizable procedural due process claim under § 1983.  Thus, this Court will grant Plaintiff leave to file an amended complaint stating a cognizable § 1983 claim with respect to the events of October 20, 2007.[2]

---

[2] If Plaintiff files an amended complaint, he should be aware that a police department is not a "person" that may be found liable under § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978).  See Petaway v. City of New Haven Police Dept., 541 F. Supp. 2d 504, 510 (D. Conn. 2008); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825-26 (D.N.J. 1993).  In addition, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 694.  To state a § 1983 claim against a municipality, the amended complaint "must identify a custom or policy, and specify what exactly that custom or policy was," McTernan v. City of York, PA, 564 F. 3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation, Jiminez v. All American Rathskeller, Inc., 503 F. 3d 247, 249 (3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  "[A] single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a municipal policy or custom caused the incident."  Brown v. City of Pittsburgh, 586 F. 3d 263, 292 (3d Cir. 2009) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 832 (1985) (Brennan, J., concurring).  To state a claim under § 1983 against an individual, "plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948.  Moreover, if Plaintiff elects to file an amended complaint asserting a § 1983 claim, he should comply with the pleading requirements of Iqbal outlined in this Opinion.

**IV.  CONCLUSION**

For the reasons set forth above, the Court grants Plaintiff's application to proceed <u>in forma pauperis</u> and dismisses the Complaint, without prejudice to the filing of an amended complaint.  The Court will enter an appropriate Order.


<u>/s/ Anne E. Thompson</u>
**ANNE E. THOMPSON, U.S.D.J.**


Dated: September 14th, 2010